UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL J. MYERS, | ) | Civ. Case No. 14-4121 |
| | ) | |
| Plaintiff, | ) | **GANT'S MEMORANDUM IN** |
| | ) | **SUPPORT OF THE MOTION TO** |
| v. | ) | **DISMISS AND** |
| | ) | **RESPONSE TO PLAINTIFF'S** |
| JASON GANT, in his official capacity | ) | **MEMORANDUM IN SUPPORT OF** |
| as Secretary of State for the State of | ) | **PRELIMINARY INJUNCTION** |
| South Dakota. | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF THE CASE

On January 9, 2014, Plaintiff and Caitlin F. Collier (Collier) filed a form
with the Secretary of State entitled "Independent Candidate for President or
Governor Declaration of Candidate and Certification of Running Mate." *See*
Affidavit of Richard M. Williams, Exhibit A. Upon this form, Plaintiff declared
his intention to run for Governor and certified Collier as his lieutenant
governor candidate. Collier, in turn, certified under oath that she agreed to
serve as a candidate for lieutenant governor. *Id.* Plaintiff thereafter circulated
his nominating petition as an independent candidate for governor. Plaintiff's
nominating petition was submitted with over 3,000 signatures of qualified
voters and accepted by the Secretary of State's Office on April 23, 2014. *See*
Plaintiff's Complaint (Doc. 1) at ¶¶ 8, 9. On June 16, 2014, the Secretary of
State's Office received a form entitled "Candidate's Request to Withdraw
Nomination" from Collier. *See* Affidavit of Williams, Exhibit B. Thereafter, on
July 15, 2014, the Secretary of State's Office received a form entitled

"Independent Candidate for President or Governor Declaration of Candidate and Certification of Running Mate" from Lora Hubbel (Hubbel). *See* Affidavit of Williams, Exhibit C. The form, although also requiring certification by Plaintiff naming Hubbel as his running mate, was unsigned by Plaintiff. On July 18, 2014, the Secretary of State's office provided Hubbel written notification that Collier could not be removed from the ballot and Hubbel could not be certified as the independent candidate for lieutenant governor. *See* Affidavit of Williams, Exhibit D. As of today's date, the Secretary of State's Office has not received any notification from Plaintiff that he has certified Hubbel as lieutenant governor candidate as required by SDCL § 12-7-1 and ARSD 5:02:08:05.01.

The Court has requested to know when the ballots for the General Election will be printed. The General Election falls on November 4, 2014. Pursuant to SDCL § 12-19-1.2, absentee voting must begin forty-six days prior to the General Election. This year, absentee voting begins on Friday, September 19, 2014. The absentee ballots, however, are required to be delivered to the County Auditors forty-eight days prior to the election or by Wednesday, September 17, 2014. SDCL § 12-16-1. In order to meet the September 17 deadline, the Secretary of State's Office would like to begin the ballot printing process at least two weeks in advance or by Wednesday, September 3, 2014.

## **MOTION TO DISMISS**

### A.   **Federal Rule of Civil Procedure 12(b)(7)**

Defendant first moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(7) for failure to join a party.  "The proponent of a motion to dismiss under [Rule] 12(b)(7) has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence."  *Raven Industries, Inc. v. Topcon Positioning Systems, Inc.,* 2009 WL 2998570 (quoting *DeWit v. Firstar Corp.,* 879 F.Supp. 947, 992 (N.D.Iowa 1995)).  Defendant maintains that these proceedings directly affect the rights of Hubbel and Collier in that Plaintiff seeks to remove Collier, who was properly nominated and placed on the ballot, with Hubbel, his current candidate of choice.  Federal Rule of Civil Procedure 19(a)(1)(B) provides as follows:

> (a) Persons Required to Be Joined if Feasible.
>
> > (1) Required Party.  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: . . .
> >
> > > (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> > >
> > > > (i)    as a practical matter impair or impede the person's ability to protect the interest[.]

Here, both Hubbel and Collier are subject to service of process. Additionally, the joinder of these individuals will not deprive the Court of subject-matter jurisdiction.  Moreover, both these individuals have interests

3

which would be substantially affected by the outcome of this litigation.  While there is no fundamental right to run for office, "[t]he right of …an individual to a place on a ballot is entitled to protection. . . ." *Lubin v. Panish*, 415 U.S. 709, 717, 94 S.Ct. 1315, 1320, 39 L.Ed.2d 702 (1974).  Plaintiff seeks to remove Collier from the ballot after Collier was properly nominated and placed on the ballot without Collier's participation in this action.  There is no question her right to be on the ballot would be directly impaired should this Court grant the relief Plaintiff seeks.  Plaintiff additionally requests the Court order Defendant to place Hubbel's name on the ballot without her participation in this action.  As a result, both Hubbel and Collier are "necessary parties."

**B.     Federal Rule of Civil Procedure 12(b)(6)**

Defendant also asserts that Plaintiff's Complaint fails to state a claim under Fed. R. Civ. P. 12(b)(6).  Fed. R. Civ. P. 12(b)(6) provides for a motion to dismiss for failure to state a claim upon which relief can be granted.  In reviewing a motion brought pursuant to Fed. R. Civ. P. 12(b)(6), courts are to take all well pled allegations as true and draw all reasonable inferences in the light most favorable to the nonmoving party. *St. Croix Waterway Ass'n v. Meyer*, 178 F.3d 515, 519 (8th Cir.1999).  A complaint should not be dismissed for failure to state a claim unless it appears beyond a reasonable doubt that the plaintiff cannot prove any set of facts entitling him to relief. *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir.2001).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662,

678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic*

*Corporation v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d

929 (2007)).  A motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6),

however, will be granted if there has been a failure to state a claim upon which

relief can be granted.

Plaintiff alleges that his right to freedom of speech, the right to vote, and

the associational rights of non-party affiliated independent candidates and

voters, and his rights to equal protection have been violated by Secretary of

State Jason Gant (Gant).  *See generally* Plaintiff's Complaint (Doc. 1).  To the

extent Plaintiff was entitled, Plaintiff was granted each of these rights as

defined by South Dakota law.

Plaintiff's Complaint is vague as to whether he is attacking Gant's

interpretation of State law or whether he is attacking a specific statute or

statutory scheme preventing him from replacing his lieutenant governor

candidate.  SDCL § 12-7-1, however, clearly states that an independent

candidate for lieutenant governor shall be properly certified by the

gubernatorial candidate and the lieutenant governor candidate prior to the

circulation of the candidate's nominating petition.  As such, once the petition

has been circulated, the gubernatorial candidate may not certify another

lieutenant governor candidate.  Accordingly, Plaintiff is necessarily attacking

SDCL § 12-7-1 or the lack of a statute otherwise providing a mechanism for

replacement.  In either event, Plaintiff presents a constitutional challenge to

5

South Dakota's statutory scheme for the nomination of independent candidates for lieutenant governor.

In order to prevail, Plaintiff has the burden of showing the challenged statutes are unconstitutional. "Legislatures are presumed to have acted constitutionally... and their statutory classification will only be set aside if no grounds can be conceived to justify them..." *Schilb v. Kuebel*, 404 U.S. 357, 364 S.Ct. 479, 484, 30 L.Ed.2d 502 (1971) (citations omitted). Because this presumption of constitutionality attaches to legislative enactments, "a party seeking to challenge a statute under this standard bears a heavy burden." *Fitz v. Dolyak, D.O.*, 712 F.2d 330, 333 (8th Cir. 1983).

It is beyond argument that "voting is of the most fundamental significance under our constitutional structure." *Burdick v. Takushi*, 504 U.S. 428, 433, 112 S.Ct. 2059, 2063, 119 L.Ed.2d 245 (1992) (citations omitted). "It does not follow, however, that the right to vote in any manner and the right to associate for political purposes through the ballot are absolute." *Id*. Furthermore, the Supreme Court has held that there is no fundamental right to run for office. *See Clements v. Fashing*, 457 U.S. 957, 963, 102 S.Ct. 2863, 2843, 73 L.Ed.2d 508 (1982); *Bullock v. Carter*, 405 U.S. 134, 142-43, 92 S.Ct. 849, 855, 31 L.Ed.2d 92 (1972). Nor has it been held that there is a fundamental right to substitute a candidate. *See Barr v. Galvin*, 626 F.3d 99 (1st Cir. 2010). States "may and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358, 117

6

S.Ct. 1364, 1369, 137 L.Ed.2d 589 (1997) (*citing Burdick*, 504 U.S. at 433, 112

S.Ct. at 2063).  Thus, in analyzing First and Fourteenth Amendment claims,

the United States Supreme Court has recognized:

> when those rights are subjected to "severe" restrictions, the
> regulation must be "narrowly drawn to advance a state interest of
> compelling importance."  But when a state election law imposes
> only "reasonable, nondiscriminatory restrictions" upon the First
> and Fourteenth Amendment rights of voters, "the State's important
> regulatory interests are generally sufficient to justify" the
> restrictions.

*Burdick*, 504 U.S. at 434, 112 S.Ct. at 2063 (citations omitted).

Plaintiff claims Gant unconstitutionally denied his access to the ballot.

Plaintiff is incorrect in his assertion.  As previously stated, the right to run for

office is not a fundamental right and barriers to that candidacy are not subject

to close scrutiny.  *Clements*, 457 U.S. at 963, 102 S.Ct. at 2843 (*citing Bullock

v. Carter*, 405 U.S. 134, 143, 92 S.Ct. 849, 855, 31 L.Ed.2d 92 (1972)).

Furthermore, under traditional notions of prudential standing, Plaintiff's claims

must be his own and not those of other parties.  *Ben Oehrleins and Sons and

Daughter, Inc., v. Hennepin County*, 115 F.3d 1372, 1378-79 (8th Cir. 1997)

(*citing* among others, *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205,

45 L.Ed.2d 343 (1975)); *Stiles v. Blunt*, 912 F.2d. 260, 265 (8th Cir. 1990)

(candidate challenging age restriction unable to raise voter's claims).

The crux of a ballot access challenge is "do the challenged laws 'freeze'

the status quo by effectively barring all candidates other than major parties," or

"could a reasonably diligent candidate be expected to satisfy the requirements."

*McLain v. Meier*, 851 F.2d 1045, 1050 (8th Cir. 1988) (citations omitted).  If

candidates are able to meet these standards, the requirements are constitutional even if "necessarily arbitrary." *Libertarian Party v. Jaeger*, 659 F.3d 687, 694 (8th Cir. 2011).

South Dakota currently has five recognized political parties.[1] Nominations for party office may occur by means of nominating petition or by party nomination at the party's state convention.  The offices subject to party nomination at the state convention are listed in SDCL § 12-5-21 which provides:

> Nomination of state candidates not voted on at primary-- Presidential electors and national committee members. The state convention shall nominate candidates for lieutenant governor, attorney general, secretary of state, state auditor, state treasurer, commissioner of school and public lands, and public utilities commissioner and in the years when a President of the United States is to be elected, presidential electors and national committeeman and national committeewoman of the party.

By statute, "nominations by a state convention shall be made by a majority vote of the votes cast and shall be certified to the secretary of state by the officers of the convention, within three days of the close of the convention." SDCL § 12-5-22.  Certifications for party nomination must be received by the Secretary of State no later than the "second Tuesday in August." *Id.*  All other party offices are selected through the primary process by means of filing a

---

[1] South Dakota's political parties include the South Dakota Democratic Party, the South Dakota Libertarian Party, the South Dakota Republican Party, Americans Elect Party and the Constitution Party.  *See* https://sdsos.gov/elections-voting/upcoming-elections/general-information/recognized-political-parties.aspx

nominating petition, containing the requisite number of valid signatures, with the Secretary of State's Office.  SDCL § 12-6-4.

Individuals wishing to run for "nonjudicial public office" who have not been nominated by primary election may run as independents.  SDCL § 12-7-1. Independents are not a recognized party in South Dakota.  Rather, they are better described in the negative as not running as a party candidate or not having registered as a member of a recognized party pursuant to SDCL § 12-6-26.[2]  Because independents are not a recognized political party in South Dakota, they have no state convention.  The lack of a state convention precludes nomination by party vote under SDCL § 12-5-21 and certification pursuant to SDCL § 12-5-22.

---

[2] For the purposes of voter registration, individuals choosing not to register with a party are described as having "no party affiliation" by SDCL § 12-6-26 which provides:

> Qualifications of voters at primary--Party registration requirements. No person may vote a party ballot at any primary election unless the person is registered as a member of that political party in the precinct in which the person seeks to vote. Any political party in its constitution or bylaws may allow for participation in the party's primary elections by any person who is registered to vote with no party affiliation. Any such change to the constitution or bylaws of a political party shall be filed pursuant to § 12-5-1.1 by January first of the year in the which the primary is conducted. (emphasis added).

The nominating procedures for independent candidates for governor and lieutenant governor are provided for in SDCL § 12-7-1 which provides in pertinent part:

> An independent candidate for Governor shall certify the candidate's selection for lieutenant governor to the secretary of state prior to circulation of the candidate's nominating petition. The candidate and the candidate's selection for lieutenant governor or vice president shall sign the certification before it is filed.

This process provides notice to the electorate, prior to the circulation of petitions by the gubernatorial candidate that a specific person is running as lieutenant governor. The public is thereby notified that if they choose to sign the petition for the gubernatorial candidate, they are in fact also nominating the lieutenant governor candidate.

In the case at bar, in accordance with the above statute and administrative rules, Plaintiff certified his selection for lieutenant governor prior to circulating his nominating petitions.[3]  *See* Affidavit of Williams, Exhibit A.  Also, prior to the circulation of Plaintiff's petition, and in accordance with the statute and administrative rules, his running mate, Collier likewise signed the certification, under oath, agreeing to serve as a candidate for lieutenant governor.  *Id.*  By this certification, and prior to the circulation of his nominating petition, Plaintiff put the public on notice that he was running for Governor as an independent candidate and that he had chosen Caitlin Collier as his running mate.  Likewise, by this certification, Caitlin Collier notified the

---

[3] ARSD 5:02:08:05:01 provides the form from the "Independent candidate declaration of candidacy and certification of a running mate."

public, under oath, that she was agreeing to serve Plaintiff's choice for lieutenant governor.  Accordingly, when members of the electorate later signed Plaintiff's nominating petition for Governor, they were also nominating Collier as their choice for lieutenant governor.  This type of direct nomination is necessary because, as previously mentioned, independents do not have a party process for the nomination of candidates for lieutenant governor.

Plaintiff's Complaint acknowledges that he had "submitted a nominating petition with more than the required number of signatures of registered voters to the South Dakota Secretary of State's Office which approved Myer's nomination and independent candidate for Governor on April 23, 2014." *See* Plaintiff's Complaint (Doc. 1) at ¶ 9.  It's undisputed that Plaintiff was certified by the Secretary of State's office as an independent candidate for governor.  It is also undisputed that at that same time, Collier was likewise certified for placement on the November General Election ballot as an independent candidate for lieutenant governor.

By this process, both Plaintiff and Collier were provided the ability to run for office and the ability to freely associate with independent candidates of their choice.  SDCL § 12-7-1 also provided the voters signing Plaintiff's nominating petition with notice that they were not only nominating a gubernatorial candidate but also that Plaintiff and Collier had certified under oath that Collier was the independent candidate for lieutenant governor.  This process allowed the voters of South Dakota, who signed Plaintiff's nominating petition, with the ability to express their right to nominate candidates of their choice for

the both offices of Governor and lieutenant governor.  With the acceptance of Plaintiff's nominating petition by the Secretary of State, the voters of South Dakota were on track to be able to vote at the November General Election for their properly nominated independent candidates of choice.

Plaintiff's Complaint, therefore, is not a demand to be placed on the ballot or be associated with a lieutenant governor of his choice.  Rather, Plaintiff's Complaint is a demand that he be able to unilaterally remove a properly nominated independent candidate for lieutenant governor and replace that candidate with a person who has not complied with the provisions of SDCL § 12-7-1 and for whom the public was not provided notice of candidacy. Nonetheless, Plaintiff alleges that he has been denied "the same statutory procedure which allows a Republican and Democrat nominee for Governor of South Dakota to fill a vacancy created by the death or withdrawal of a lieutenant governor candidate." *See* Complaint (Doc. 1) at ¶ 17.  Plaintiff's allegation is a misinterpretation of state law.  <u>There is no statute or procedure in South Dakota that allows any candidate for Governor, party or independent, to unilaterally name or replace an officially nominated candidate for lieutenant governor.</u>

For political parties, the nomination of lieutenant governor is made at the state convention.  At the state convention, the voting members of a recognized political party are made up of elected precinct committeemen and precinct committeewomen, the county chairperson, county vice-chairperson, a secretary-treasurer or a treasurer, who have been elected by the party, and

either elected or appointed delegates.  SDCL § 12-5-2; 12-5-4; 12-5-14; 12-5-18.   If appointed, the delegates are selected by the elected members of the political party.  *Id.*  Party candidates for lieutenant governor are nominated at the party's state convention by a majority vote of the votes cast and certified to the secretary of state within three days of the close of the convention.  SDCL § 12-5-22.  Party candidates for lieutenant governor are **not** selected by the gubernatorial candidates themselves.

As Plaintiff notes, vacancies in party office may be filled if done in the appropriate manner and certified to the Secretary of State before the second Tuesday in August at five p.m.  SDCL § 12-8-6.  The procedure, however, does not allow a party gubernatorial candidate to nominate a new lieutenant governor candidate by simply filing a form with the Secretary of State's Office.  As with the nomination of a lieutenant governor, the replacement of a lieutenant governor candidate must also be done by party vote and nomination.  If a vacancy occurs for lieutenant governor, a statewide office, the State Party Central Committee is charged with the responsibility of replacing that nominee.  SDCL § 12-6-56.  "Vacancies filled by the State Central Committee shall be by unit representation, each county casting the number of votes cast in that county at the last general election for that party's candidate for Governor."  SDCL § 12-6-57.  This process again ensures the nomination of a replacement for a party candidate for lieutenant governor is accomplished by the voters through their representatives within the party system.

Plaintiff's request that he be able to remove a validly nominated candidate for lieutenant governor and then unilaterally nominate a replacement lieutenant governor of his choice ignores the political process. Rather than providing the voters of South Dakota the opportunity to vote for a candidate of their choice, Plaintiff's request does quite the opposite. Collier's nomination was secured by the voters of South Dakota only after certification by Plaintiff and Collier that Collier agreed to serve as Plaintiff's choice for lieutenant governor. Plaintiff wishes to, on his own, undo the will of over 3,000 voters who signed his nominating petition with the expectation that Collier would be his running mate. Plaintiff's request would further disenfranchise those voters at the General Election by denying them the opportunity to vote for the individual they expected to be the lieutenant governor candidate. The voters who signed Plaintiff's petition do not have another opportunity to nominate a replacement candidate for lieutenant governor. Moreover, Collier cannot simply drop off the ballot because Article IV section 2 of the South Dakota Constitution requires that the governor and lieutenant governor be jointly elected.

The electorate will, by means of a representative form of government, be given a chance to choose a new candidate for lieutenant governor if Plaintiff is elected and Collier chooses to resign. In the event Collier chooses to resign after Plaintiff is elected, Plaintiff will have the opportunity to replace Collier with his new appointment for lieutenant governor. Plaintiff's appointment

would be subject to confirmation by a majority of members of each house of the legislature pursuant to South Dakota Constitution Article IV section 6.

The "State has an interest, if not a duty, to protect the integrity of its political processes from frivolous or fraudulent candidacies." *Storer v. Brown*, 415 U.S. 724, 733, 94 S.Ct. 1274, 1280, 39 L.Ed.2d 714 (1974) (citing *Jenness*, 403 U.S., at 442, 91 S.Ct., at 1976).

> There is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot-the interest, if no other, in avoiding confusion, deception and even frustration of the democratic process at the general election.

*Storer*, 415 U.S. at 732, 94 S.Ct. at 1280 (quoting *Jenness*, 403 U.S., at 442, 91 S.Ct., at 1976).  Plaintiff and Collier demonstrated a "significant modicum of support" when Plaintiff and Collier notified the voters of South Dakota, pursuant to SDCL § 12-7-1, that they were running as independent candidates for Governor and lieutenant governor and obtained, as a team, the requisite number of signatures to be placed on the ballot for the November General Election.

The same is not true for Plaintiff and putative running mate Hubbel. Plaintiff has not demonstrated, by means of certification of candidate and petition circulation in compliance with SDCL § 12-7-1, that the Myers-Hubbel ballot enjoys the significant modicum of support necessary to be placed on the

15

ballot.[4] As noted in *Burdick v. Takushi*, 504 U.S. 428, 433, 112 S.Ct. 2059, 2063, 119 L.Ed.2d 245 (1992), it is "eminently reasonable" to limit the choice of candidates to individuals who have complied with the state election laws. *Burdick*, 504 U.S. at 440 n.10, 112 S.Ct. 2059. The fact that a particular candidate, in this case Hubbel, failed to qualify for the ballot does not severely burden [Plaintiff's] associational rights.[5] *Timmons v. Twin Cities Area New Party*, 520 U.S. at 359, 117 S.Ct. at 1370. The State may constitutionally limit ballot access to Plaintiff and his properly certified lieutenant governor candidate. Thus, Plaintiff fails to prove a violation of his rights. Additionally, he does not demonstrate the State's interests are not sufficient to justify the regulations. *See Burdick*, 504 U.S. at 434, 112 S.Ct. at 2063 (citations omitted).

Plaintiff also asserts the laws of South Dakota unfairly and unequally burden him as a nonparty candidate in that he may not unilaterally substitute the candidate for lieutenant governor. In reviewing an equal protection claim, "[t]he Court must consider whether the burden Plaintiff is unreasonable and

---

[4] Even to this day, Plaintiff has failed to certify Hubbel as his running mate by filing the appropriate declaration and certification of running mate. *See* Exhibit C, ARSD 5:02:08:05.01 (declaration of candidate and certification of running mate form).

[5] Although no voter is a plaintiff in this lawsuit, they would nonetheless be prohibited from asserting a right to vote for Hubbel. Where a candidate herself is barred from challenging an election statute, there is no basis for a court to consider a challenge by a voter who desires to support that unqualified candidate. *Storer*, 415 U.S. at 737, 94 S.Ct. 1274.

whether the burden was outweighed by the State's interest in, among other things, avoiding ballot clutter and ensuring viable candidates." *Constitution Party of South Dakota v. Nelson*, 730 F.Supp. 2d 922, 1006 (D.S.D. 2010) (citing *Jenness,* 403 U.S. at 442, 91 S.Ct. 1970).  The Supreme Court has held that "[i]n making an equal protection challenge, it is the claimant's burden to 'demonstrate in the first instance a discrimination against [him] of some substance.'" *Clements*, 457 U.S. at 967, 102 S.Ct. at 2845 (quoting *American Party of Texas v. White*, 415 U.S. 767, 781, 94 S.Ct. 1296, 1306, 39 L.Ed.2d 744 (1974)).  As previously set forth, no gubernatorial candidate in South Dakota, party or nonparty, has the right or opportunity to unilaterally substitute the candidate for lieutenant governor.  Rather, South Dakota law requires that the substitute candidate for lieutenant governor demonstrate that he or she has some support from the voting public, either by having been chosen by the elected party officials or by being presented to the voting public and nominated with the gubernatorial candidate by petition.  That Plaintiff does not have the opportunity to replace his running mate in the manner in which party candidates may is not a violation of the Equal Protection Clause. "Classification is the essence of all legislation, and only those classifications which are invidious, arbitrary, or irrational offend the Equal Protection Clause of the Constitution." *Clements*, 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982) (citing *Williamson v. Lee Optical Co.,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955)).  As the Supreme Court noted, "[t]he fact is that there are obvious differences in kind between the needs and potentials of a

political party with historically established broad support, on the one hand, and a new or small political organization on the other. [A State] has not been guilty of invidious discrimination in recognizing these differences and providing different routes to the printed ballot. Sometimes the grossest discrimination can lie in treating things that are different as though they were exactly alike[.]" *Jenness v. Fortson*, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971).

Plaintiff has not shown "a discrimination against [him] of some substance." *See Clements*, 457 U.S. at 967, 102 S.Ct. at 2845 (citations omitted). Neither has Plaintiff demonstrated that the requirements for nonparty candidates are based upon a classification that is "invidious, arbitrary, or irrational." As a result, his claim that his equal protection rights have been violated must fail.

**RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION**

An injunction is an extraordinary remedy reserved for instances where the right to relief is clear. *Crow Creek Sioux Tribal Farms, Inc. v. United States Internal Revenue Service*, 684 F.Supp.2d 1152, 1156 (D.S.D. 2010) (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 102, S.Ct. 1798, 72 L.Ed.2d 91 (1982)). Where an injunction seeks to enjoin a duly enacted statute, the Court must make a threshold finding that the moving party is "likely to prevail on the merits." *Planned Parenthood v. Rounds*, 530 F.3d 724, 732-733 (8th Cir. 2008). This more rigorous standard helps to ensure "that preliminary injunctions that thwart a state's presumptively reasonable democratic

processes are pronounced only after an appropriately differential analysis."
*Planned Parenthood*, 530 F.3d at 733.

If it has first been shown that Plaintiff is likely to prevail on the merits,
the Court may then proceed to examine the remaining *Dataphase* factors.
*Planned Parenthood*, 530 F.3d at 732. The *Dataphase* factors are: (1) the threat
of irreparable harm to the Plaintiffs; (2) the state of the balance of harm and
the injury that granting the injunction will inflict on the Defendant; (3) the
probability Plaintiffs will succeed on the merits; and (4) the public interest. *See*
*Dataphase Systems Inc. v. CL Systems Inc.*, 640 F.2d 109, 113 (8th Cir. 1981)
(en banc). "The party seeking injunctive relief bears the burden of proving all
the *Dataphase* factors." *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir.
2003). In *Winter v. Natural Resources Defense Council, Inc.*, the United States
Supreme Court clarified that plaintiffs seeking preliminary relief must
"demonstrate that irreparable injury is *likely* in the absence of an injunction."
*Winter*, 555 U.S. 7, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008) (italics in
original).

**1.    Threat of Irreparable Harm to Plaintiffs.**

Plaintiff alleges he will be irreparably harmed if Collier's name is not
removed from the ballot and replaced with Hubbel's. He contends that he
would be unable to campaign as a team with Hubbel and make strategic
campaign decisions with her assistance if her name is not on the ballot. These
contentions, however, are disingenuous.

19

Plaintiff and Collier were officially nominated on April 23, 2014.  *See* Plaintiff's Memorandum In Support of Plaintiff's Motion for Preliminary Injunction (Plaintiff's Memorandum, Doc. 10), p. 4.  From April 23, 2014, until approximately June 12, 2014, when Collier notified Plaintiff of her need to withdraw, Plaintiff campaigned with Collier as his choice for lieutenant governor.  Thereafter, Plaintiff continued to campaign knowing that Collier would ultimately not act as lieutenant governor for nearly a month.  It was not until July 8, 2014, that Plaintiff unofficially announced his intention to nominate Lora Hubbel as his choice to replace Collier.  *See* Plaintiff's Memorandum at p. 4.  Hubbel, however, did not notify the Secretary of State's office that she wished to replace Collier as Plaintiff's choice for lieutenant governor until July 15, 2014.  From then on, Plaintiff has actively campaigned and held press releases naming Hubbel as his choice for lieutenant governor. Plaintiff himself, however, has yet to provide any certification to the Secretary of State's Office that he wished to replace Collier with Hubbel.

Plaintiff did not spring to action to ensure consistency with regard to his choice of running mate.  Moreover, Plaintiff has demonstrated his ability to campaign with Collier, without Collier, and with Hubbel.  Plaintiff's actions do not illustrate an inability to effectively campaign nor do they illustrate an urgent need for this Court to act.  At most, the situation presents an inconvenience for Plaintiff as he may need to explain his proposed substitution. This factor does not weigh in favor of granting a preliminary and/or permanent injunction.  Additionally, the Eighth Circuit has held that "[f]ailure to show

irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Watkins*, 346 F.3d at 844.

## 2.   **Injury to Defendant**

The next factor considers the injury to Defendant should an injunction issue.  Plaintiff requests that this Court cast aside substantive election laws duly enacted by the state of South Dakota in order for Hubbel's name to be placed on the ballot.  This would thwart the State's legitimate interest in protecting the integrity of the ballot and maintaining a stable political system. *See Storer*, 415 U.S. at 732, 94 S.Ct. at 1280 (citing *Jenness*, 403 U.S., at 442, 91 S.Ct., at 1976).  As previously set forth, the "State has an interest, if not a duty, to protect the integrity of its political processes from frivolous or fraudulent candidacies."  *Storer*, 415 U.S. at 733, 94 S.Ct. at 1280 (citing *Jenness*, 403 U.S., at 442, 91 S.Ct., at 1976).

Moreover, unlike Plaintiff and Collier, Plaintiff and Hubbel have not shown they have the requisite support in South Dakota to have Hubbel's name appear on the ballot.  The United States Supreme Court has repeatedly recognized that "there is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot – the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election." *Jenness*, 403 U.S. at 442, 91 S.Ct. at 1976; *see also Munro v. Socialist Workers Party*, 479 U.S. 189, 194, 107 S.Ct. 533, 93 L.Ed.2d 499 (1986) (a state has the "undoubted right to require candidates to

make a preliminary showing of substantial support in order to qualify for a place on the ballot"). Gant and the public in general, have a strong interest in seeing that the election laws are carefully followed. Plaintiff's request to remove a candidate that has been duly certified and replace that person with new selection that has not complied with South Dakota law and who has shown no support from the voting public, cuts against the State's interest in maintaining orderly elections.

**3.     Likelihood of Success on the Merits.**

As described more thoroughly above, Plaintiff is not likely to succeed on the merits. The right to run for office is not a fundamental right and barriers to that candidacy are not subject to close scrutiny. *Clements*, 457 U.S. at 963, 102 S.Ct. at 2843 (1982) (citing *Bullock*, 405 U.S. at 143, 92 S.Ct. at 855 (1972). South Dakota's nominating process for governor and lieutenant governor do not "'freeze' the status quo by effectively barring all candidates other than major parties." *McLain v. Meier*, 851 F.2d at 1050 (8th Cir. 1988) (citations omitted). Instead, as demonstrated by Plaintiff and Collier by the submission of Plaintiff's nominating petition, independent candidates for governor and lieutenant governor are routinely placed on the ballot subject to a showing of a significant modicum of support. *Storer*, 415 U.S. at 732, 94 S.Ct. at 1280 (1974) (citing *Jenness*, 403 U.S., at 442, 91 S.Ct., at 1976) (states have an important interest in requiring a showing of a "significant modicum of support" before placing candidate on ballot). Plaintiff and Hubbel have not complied with the election laws and have not made such a showing.

Accordingly, they are not entitled to appear as paired team for Governor and lieutenant governor on the ballot at the General Election.

Moreover, South Dakota's statutory scheme does not violate Plaintiff's right to equal protection. Plaintiff alleges that he is treated unfairly because he cannot unilaterally substitute his running mate. However, none of the gubernatorial candidates have that authority. Furthermore, South Dakota's statutory scheme regarding how candidates are substituted on the ballot are not invidious, arbitrary, or irrational. *Clements*, 457 U.S. 957, 102 S. Ct. 2836, 73 L.Ed.2d 508 (1982) (citing *Williamson v. Lee Optical Co.,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955)). Plaintiff therefore fails to demonstrate likelihood of success on the merits.

## 4. Public Interest.

As stated throughout this brief, the State has an interest in protecting the integrity of the political process. *Storer*, 415 U.S. at 733, 94 S.Ct. at 1280 (citation omitted). As part of that responsibility, the Legislature enacted provisions allowing party and non-party candidates access to the ballot. Public policy is primarily determined by the constitution, statutes, common law, and judicial decisions of a state. *Twin City Pipe Line Co. v. Harding Glass Co.,* 283 U.S. 353, 357, 51 S.Ct. 476, 75 L.Ed. 1112 (1931).

For independents, that process is found in SDCL § 12-7-1. In conformance with that provision, Plaintiff and Collier gained access to the ballot for the November General Election. Prior to the circulation of Plaintiff's nominating petition, Plaintiff and Collier certified to the public that Plaintiff

was to be the candidate for governor and Collier was to be the lieutenant governor candidate. In reliance on that certification, over 3,000 South Dakota voters signed Plaintiff's petition and voiced their preference for their candidates of choice. Plaintiff now wishes to circumvent that duly enacted process by unilaterally picking a replacement candidate for lieutenant governor. Plaintiff's request would effectively nullify the voices of the 3,000 voters who supported the Myers – Collier ballot.

Plaintiff attempts to justify his position by arguing that party candidates for Governor are allowed to replace their nominees. As described above, however, that is simply not the case. Party candidates for lieutenant governor are selected and replaced by party vote. The party is comprised of elected committee members and those duly appointed by them. The voting public maintains a say in replacement of party lieutenant governor candidates through their representative process. Plaintiff's position is contrary to the public interest because it attempts to discard the public's representation in the political process and replace it with the will of one individual. No candidate for governor, party or non-party, is afforded such a right.

Thus, a review of the *Dataphase* factors reveals that a preliminary injunction should not issue. Plaintiff cannot demonstrate that he would suffer an irreparable harm. Moreover, issuing a preliminary injunction and allowing Plaintiff to unilaterally replace the name of his properly nominated running mate would circumvent the law and undermine the State's important interests

as well as the public's interest in nominating the candidates of their choice through the statutory processes set forth in South Dakota Codified Law.

## CONCLUSION

For all the foregoing reasons, Defendant respectfully requests the Court grant Defendant's Motion to Dismiss, dismiss the Complaint, and deny Plaintiff's Motion for Preliminary Injunction.

Dated this 7th day of August, 2014.

MARTY J. JACKLEY
ATTORNEY GENERAL

/s/ Richard M. Williams
Richard M. Williams
Assistant Attorney General

/s/ Ann F. Mines
Ann Mines
Assistant Attorney General

*Counsel for Defendant*
1302 E. Hwy 14, Suite 1
Pierre, SD  57501
Telephone: (605) 773-3215
Rich.Williams@state.sd.us
Ann.mines@state.sd.us

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL J. MYERS, | ) | Civ. Case No. 14-4121 |
| | ) | |
| Plaintiff, | ) | **CERTIFICATE OF COMPLIANCE** |
| | ) | |
| v. | ) | |
| | ) | |
| JASON GANT, in his official capacity | ) | |
| as Secretary of State for the State of | ) | |
| South Dakota. | ) | |
| | ) | |
| Defendant. | ) | |

1.     I certify that the Gant's Memorandum in Support of the Motion to Dismiss and Response to Plaintiff's Memorandum in Support of Preliminary Injunction is within the limitation provided for in SDCL 15-26A-66(b) using Bookman Old Style typeface in 12 point type.  Said Memorandum contains 6,183 words.

2.     I certify that the word processing software used to prepare this brief is Microsoft Word 2011.

Dated this 7th day of August 2014.

MARTY J. JACKLEY
ATTORNEY GENERAL

/s/ Richard M. Williams
Richard M. Williams
Assistant Attorney General

/s/ Ann F. Mines
Ann Mines
Assistant Attorney General
*Counsel for Defendant*
1302 E. Hwy 14, Suite 1
Pierre, SD  57501
Telephone: (605) 773-3215
Rich.Williams@state.sd.us
Ann.mines@state.sd.us