**FILED**

MAY 27 2015



UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| MICHAEL J. MYERS | \* | CIV 14-4121 |
| | \* | |
| Plaintiff, | \* | |
| | \* | MEMORANDUM OPINION AND |
| | \* | ORDER ON PLAINTIFF'S MOTION |
| vs. | \* | FOR ATTORNEY'S FEES AND COSTS |
| | \* | |
| JASON M. GANT, in his official capacity as | \* | |
| Secretary of State for the State of South | \* | |
| Dakota | \* | |
| | \* | |
| Defendant. | \* | |
| | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Upon prevailing on a 42 U.S.C. § 1983 action, lawyer for Plaintiff, Edward Welch, moves the Court for reasonable attorney's fee and costs. Based on the following, the motion is granted.

## BACKGROUND

On January 7, 2014, Myers declared his intention to run as an Independent candidate for Governor of South Dakota in the November 2014 election. On January 9, 2014, Myers and Caitlin F. Collier (Collier) filed with the Secretary of State. A form filed with the Secretary of State stated Myers' intention to run for governor and certified Collier as his lieutenant governor candidate. Next, Myers circulated his nominating petition. Collier's name was not required to and did not appear on the Myers' nominating petition. On April 23, 2014, Myers submitted his nominating petition with more than the required number of signatures of registered voters to the South Dakota Secretary of State's Office, which approved Myers' nomination as a non-party Independent candidate for governor.

On or before June 12, 2014, Collier informed Myers that she needed to withdraw from the race for personal reasons. On June 16, 2014, the Secretary of State's Office received a notarized form from Collier entitled "Candidate's Request to Withdraw Nomination." On July 8, 2014, Myers announced his nomination of Lora Hubbel to replace Collier as his running mate. That same day, Hubbel signed and submitted the bottom portion of an "Independent Candidate For Governor Declaration of Candidate and Certification of Running Mate" form to the South Dakota Secretary of State's Office to get her name placed on the election ballot as Myers'

1

running mate. This notarized form was received by the South Dakota Secretary of State's Office on July 15, 2014.

On July 18, 2014, the Secretary of State's office notified Hubbel and Myers by letter that Hubbel could not be certified as the candidate for lieutenant governor and Collier could not be removed from the ballot. According to Gant's letter, there was no South Dakota law allowing a non-party Independent gubernatorial candidate to certify a replacement candidate for lieutenant governor after the candidate had met the deadline for circulating and filing his or her nominating petition. Gant also stated that Collier could not simply drop off the ballot because Article IV section 2 of the South Dakota Constitution requires that the governor and lieutenant governor be jointly elected.

South Dakota law allowed party nominees for governor, such as Republicans and Democrats, to fill a vacancy created by the death or withdrawal of their running mate up until the second Tuesday in August, which was August 12, 2014, of last year's election cycle. *See* SDCL § 12-8-6. As with the nomination of a lieutenant governor, the replacement of a lieutenant governor candidate must be done by party vote and nomination. If a vacancy occurs for lieutenant governor, a statewide office, the State Party Central Committee is charged with the responsibility of replacing that nominee. SDCL § 12-6-56. "Vacancies filled by the State Central Committee shall be by unit representation, each county casting the number of votes cast in that county at the last general election for that party's candidate for Governor." SDCL § 12-6-57. Gant contended that Collier's nomination was secured by the voters of South Dakota after certification by Myers and Collier that Collier agreed to serve as Myers' choice for lieutenant governor. Replacing Collier with Hubbel, Gant believed, would have undone the will of over 3,000 voters who signed Myers' nominating petition with the expectation that Collier would be his running mate, and would disenfranchise those voters at the general election by denying them the opportunity to vote for the individual they expected to be the lieutenant governor candidate.

Myers claimed that the failure to provide equal ballot access to non-party candidates imposed an unconstitutional burden on his First and Fourteenth Amendment rights of free association by effectively preventing him from replacing his running mate. This Court found in favor of Myers. Myers' lawyer, Edward Welch, has now moved the Court for reasonable attorney's fees in relation to his work on Myers' case. Welch's motion is unopposed by Defendant.

## DISCUSSION

### Attorney Fees

"The 'prevailing party' in a § 1983 action is generally entitled to 'a reasonable attorney's fee.'" *Warnock v. Archer*, 397 F.3d 1024, 1026 (8th Cir. 2005) (citing 42 U.S.C. § 1983; *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)). *See also Maher v. Gagne*, 448 U.S. 122, 124 (1980). The basic standard for determining if a plaintiff is a "prevailing party" is "if they succeed on any

2

significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Eckerhart*, 461 U.S. at 433 (quoting *Nadeau v. Helgmoe*, 581 F.2d 275, 278-79 (1st Cir. 1978) (abrogation recognized on other grounds)).

Here, Plaintiff was the prevailing party. Plaintiff brought a single 42 U.S.C. § 1983 claim against Defendant upon which he was accorded the requested relief. Thus, Plaintiff succeeded on a "significant issue in litigation" as it was the only issue. Upon resolving the question in a plaintiff's favor, the next step is to determine if the requested attorney's fee is reasonable. *Id.*

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* [1] A strong presumption exists that the figure resulting from the above calculation (i.e., the lodestar figure) is reasonable. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554, 130 S.Ct. 1662, 1673 (2010). In order to allow a court to best apply the formula, it is incumbent upon the moving party to submit supporting evidence showing hours worked and claimed rates.[2] *Eckerhart*, 461 U.S. at 433. If the submitted documentation is inadequate, it is within the court's discretion to adjust the requested fee accordingly. *Id.* "[T]he lodestar figure includes most, if not all, of the relevant factors constituting a reasonable attorney's fee, and [] an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation, . . ." *Perdue*, 559 U.S. at 553 (internal quotations and internal citations omitted). A critical factor to consider when evaluating attorney fees is the degree of success the claimant obtained. *Eckerhart*, 461 U.S. at 436, 40 ("We hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988."). Thereafter, a court may adjust the calculated fee based on the particular circumstances of a case.[3] *Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541 (1984). Ultimately, "[h]ours that are not properly billed to one's

---

[1] This formula has become known simply as the "lodestar." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546, 130 S.Ct. 1662, 1669 (2010). Prior to the lodestar, courts employed a list of 12 factors to determine if an attorney's fee was reasonable. *Id.* at 550-51 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). The factor-centric analysis, however, was held by the Supreme Court to offer little guidance to lower courts and placed an overabundance of discretion in them. *Id.* at 551 ("[T]he lodestar method is readily administrable . . . and unlike the *Johnson* approach, the lodestar calculation is 'objective," . . . and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results.") (internal citations omitted). Subsequent to *Johnson*, the Third Circuit developed the lodestar, which was adopted by the Supreme Court in *Eckerhart*. *Id.*

[2] The Supreme Court, in a footnote in the majority opinion of *Blum v. Stenson*, 465 U.S. 886. 104 S.Ct. 1541 (1984), stated that attorneys moving for attorney's fees should also submit "satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Stenson*, 465 U.S. at 895 n. 11. The rate determined by such evidence is typically deemed reasonable and is referred to as the prevailing market rate. *Id.* Here, however, Welch has submitted no such evidence. But from other cases previously before the Court, the Court is aware of the prevailing rates in this community.

[3] It should be noted, however, that the Supreme Court has "never sustained an enhancement of a lodestar amount for performance . . . , [and has] repeatedly said that enhancements may be awarded in 'rare' and 'exceptional circumstances." *Perdue*, 559 U.S. at 552 (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088 (1986)) (internal citations and internal quotations omitted). See *Stenson*, 465 U.S. at 897-99. The burden of proving an enhancement is on the movant. *Perdue*, 559 U.S. at 553.

3

*client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Eckerhart*, 461 U.S. at 434 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc) (emphasis in original)).

First, the Court will determine if the claimed number of hours worked is reasonable. "A court may reduce attorney hours, and consequently fees, for inefficiency . . ." *A.J. by L.B. v. Kierst*, 56 F.3d 849, 864 (8th Cir. 1995). Other factors, such as a case's novelty and complexity, are also generally reflected in an attorney's billable hours. *Perdue*, 559 U.S. 553. While Welch's motion for attorney fees is unopposed by Defendant, the Court finds it necessary to review the various hours claimed. *See* CHARLES ALAN WRIGHT, ET AL, 10 FEDERAL PRACTICE AND PROCEDURE § 2675.1 (3d ed. 2014) ("[I]t generally is recognized that the federal courts should exercise care and restraint when awarding attorney fees. Undue generosity might encourage some members of the bar to seek out clients and encourage litigation over disputes that otherwise might not reach the courts."); *Baker v. John Morrell & Co.*, 263 F. Supp. 2d 1161, 1196 (N.D. Iowa 2003) (citing *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1330 (8th Cir. 1995)) ("In the face of arguments that the fees claimed are vaguely described, duplicative, or excessive for the work done, the court should carefully review the documentation supporting the fee request and provide reasons for determination of the amount awarded.").

Welch claims compensation for a total of 109.5 hours worked. The Court has been provided with Welch's affidavit detailing hours spent working various aspects of the case. This Court had somewhat similar circumstances in *Cottier v. City of Martin*, No. CIV 02-5021, 2008 WL 2696917 (D.S.D. March 25, 2008) and will look to it for guidance. There, a voting rights challenge was brought against the City of Martin (the City) by a group of Native Americans (the Plaintiffs). The Plaintiffs contended that the City passed a voting redistricting ordinance that created unequal populations of voting wards. The Plaintiffs sought injunctive relief against the ordinance. Thereafter, the City passed a separate ordinance that appeared to redistrict the population evenly. As a result, it was determined that the Plaintiffs' claim against the original ordinance was moot. The Plaintiffs then filed a supplemental complaint alleging that the second ordinance unconstitutionally diluted the voting power of Native Americans in violation of the Voting Rights Act of 1965, 42 U.S.C. § 1973, and the Fourteenth and Fifteenth Amendments. The Court found in favor of the City, which was affirmed in part and reversed in part by the Eighth Circuit. The Eighth Circuit remanded Plaintiff's Voting Rights Act claim for further proceedings wherein the Plaintiffs prevailed. The Plaintiffs subsequently moved for attorney fees. Similar to 42 U.S.C. § 1988, 42 U.S.C. § 1973(e) allows courts to award reasonable attorney's fees to a prevailing party.[4] The Plaintiffs sought compensation for a total of 2,446.61

---

[4] In relevant part, the statute stated, "In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, . . . a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of the costs." *Cottier*, 2008 WL 2696917 at * 1 (quoting 42 U.S.C. § 19731(e)).

4

hours. The Court deducted two separate sets of hours as being duplicative of others and sustained the remaining claims.

Welch's affidavit is adequately detailed and is reasonable when considering the present case and also when set against the hours sustained by the Court in *Cottier*. There, Plaintiff's fees related to litigation proceedings spanning from 2002 to 2007 and several claims for relief. Moreover, the Court finds that the instant case, unlike what the *Eckerhart* Court confronted, does not rise to a level of "complex civil rights litigation involving numerous challenges to institutional practices or conditions" that would merit hours in the thousands being spent by the party-attorneys. *Eckerhart*, 461 U.S. at 436. Welch's fees, rather, encompass litigation that included one cause of action and spanned roughly a month in time for a total of hours expended amounting to approximately five days, a mere fraction of what was claimed in *Cottier* and *Eckerhart*. The complexity of the work was of a moderate magnitude given that South Dakota did not have a law in place controlling the withdrawal and replacement of an Independent gubernatorial candidate. The statute that was in place and that ultimately gave rise to Myers' single cause of action, applied only to the two major parties.

Five hours of Welch's legal work was spent ascertaining things that an experienced litigator would know and would not have to research, such as the procedure for initiating litigation in federal court. Those hours will not, however, be deducted for what is allowed as attorney fees. The reason is that, refreshingly, Welch, as a newly admitted lawyer, charged less than the prevailing rate in this community for an inexperienced lawyer. As a result, there should be no penalty for inexperience as that was fully taken into account in the $85 an hour rate requested. In addition, inexperienced lawyers should, as was done in the present case, spend extra effort in making sure that they are meeting legal requirements when initiating litigation instead of charging ahead fortified only with the knowledge that they graduated from law school and passed the bar exam.

As indicated above, Welch's hourly rate of $85 an hour is more than reasonable. The "reasonable hourly rate" is determined, at least in part, by an examination of "the prevailing market rates in the relevant community." *Perdue*, 559 U.S. at 1672. Courts have also looked to such factors as "the availability of adequate local counsel, . . . the experience of the attorney, and the complexity of the work." Wright, *supra*, at § 2675.2. *See Stenson*, 465 U.S. at 897-99. A remaining factor to be considered is the attorney's general performance. *See Perdue*, 559 U.S. at 553. Like what was noted in *Eckerhart*, the relief accorded to Plaintiffs here not only affects them but also the voting populace of South Dakota and potential Independent gubernatorial candidates. *See Eckerhart*, 461 U.S. at 438. Unlike the claimants in *Eckerhart*, however, Plaintiff's case here did not consist of multiple related claims only upon a portion of which Welch prevailed. Instead, Plaintiff brought a single cause of action against Defendant. Plaintiff was completely successful on that cause of action. Welch has offered nothing establishing his experience as an attorney or documentation of this community's prevailing market rate. From the court hearing, the Court was aware that Welch had just been admitted to the federal bar and this

5

was his first case. As for the community market rate, the Court will again turn to *Cottier* for comparison and guidance.

In *Cottier*, three attorneys were employed to represent the Plaintiffs. Lead counsel was Bryan Sells, a Columbia Law School graduate who had previously clerked in the United States District Court for the District of Alabama. Sells specialized in voting rights and had previously been involved in cases in front of the United States Supreme Court. Next, Lauglin McDonald was the director of the Voting Rights Project of the American Civil Liberties Union Foundation, Inc., was a graduate of the University of Virginia Law School, and had been practicing law for more than 35 years. McDonald had also authored various works on voting rights related to minorities. Lastly, Patrick K. Duffy acted as local counsel for the Plaintiffs. While having no specific experience in voting rights law, he had been in the practice of law for over twenty years and was South Dakota Trial Lawyer of the Year in 2006. The counselors charged $225, $400, and $250 per hour, respectively. Due to a delay in compensation, the Court declined to set Sells' and Duffy's rates to their 2003 levels. Instead, the Court set each rate at $200, which represented the "midpoint" of the rates between 2003 and 2007. McDonald's rate was sustained at $400 as Plaintiffs had submitted evidence that they had been unable to locate adequate local counsel and McDonald would not have accepted the invitation to represent Plaintiffs for less than that fee. Additionally, McDonald's expertise in the field of voting rights was unmatched. Also involved in *Cottier* were two paralegals for the Plaintiffs receiving fees of $75 and $45 per hour, respectively.

Although the case upon which Welch prevailed is of important constitutional concern, it does not involve the same complexity that was showcased in *Cottier*. Indeed, *Cottier* spanned five years and involved several claims put forth by the Plaintiffs there. Here, however, the litigation spanned for approximately a month and involved a single 42 U.S.C. § 1983 claim. Given the importance Myers' case could have for future candidates, and considering Welch's relative inexperience, and the fact that Plaintiff prevailed completely, the Court finds that Welch's claim for $85 per hour is certainly reasonable. Also, given the Court has no evidence in this record of the community's prevailing market rate, the $85 figure appears to adequately reflect Welch's experience relative to the lawyers in *Cottier*. It is reasonably less than the lowest fee of the three experienced attorneys in *Cottier*. The Court also notes the attorneys on the Criminal Justice Act panel for this District are paid at the rate of $127 per hour for a non-capital punishment case.

### Taxation of Costs

Welch also moves the Court for an award of costs in the amount of $421.83. That figure includes the $400 filing fee, a $9.39 expense incurred as a result of serving by certified mail the Office of the Attorney General, and a $12.44 incurred as a result of sending by registered mail Myers' "Independent Candidate Declaration of Candidate and Certification of Running Mate" and "Certification of Nomination to Fill a Vacancy" to the Office of the Secretary of State.

Unless the Court directs otherwise, the prevailing party in an action is entitled to an award of costs other than attorneys' fees pursuant to Federal Rule of Civil Procedure 54(d). *Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 889 (8th Cir. 2006) (citing Fed.R.Civ.P. 54). The amount of costs awarded is an "issue [ ] within the sound discretion of the district court. . . ." *Poe v. John Deere Co.*, 695 F.2d 1103, 1108 (8th Cir. 1982). "However, such costs must be set out in 28 U.S.C. § 1920 or some other statutory authorization." *Smith*, 436 F.3d at 889.  Section 1920 provides that:

> A judge or clerk of any court of the United States may tax as costs the following:
> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C.A. § 1920. In addition, Federal Rule of Civil Procedure 54(d) has been interpreted as creating a presumption that costs are to be awarded to the prevailing party. *See Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352 (1981); *Martin v. DaimlerChrysler*, 251 F.3d 691, 696 (8th Cir. 2001) (citations omitted). As the $400 cost for filing with the Clerk of Courts is the only cost of Welch's claims allowable under 28 U.S.C. § 1920, it is the only claim the Court will permit. Accordingly,

IT IS ORDERED (1) that Welch's Motion for Attorney Fees is granted and will be in the amount of $9,307.50 plus sales tax of $558.45; and (2) Welch's Motion for Taxation of Costs is granted in part and will be in the amount of $400.00.

Dated this 27th day of May, 2015.

BY THE COURT:

/s/ Lawrence L. Piersol
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, Clerk of Courts

By_____
        Deputy